United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE:**<br><br>**ANTHONY SCOTT LEVANDOWSKI,**<br><br>Debtor.<br><br>**PETER KRAVITZ *et al.*,**<br><br>**Appellants,**<br><br>**vs.**<br><br>**THE UNITED STATES OF AMERICA, *on behalf of The Internal Revenue Service*,**<br><br>- and -<br><br>**CALIFORNIA FRANCHISE TAX BOARD,**<br><br>**Appellees.** | **Case No.: 4:25-cv-02713-YGR**<br><br>On appeal from:<br><br>Bankruptcy Case No. 20-bk-30242 (HLB) Chapter 11<br><br>**ORDER REVERSING TAX ORDER AND REMANDING** |

This action arises out of a January 24, 2024 bankruptcy order finding that the "Uber Main Payment" ("UMP")[1] constituted gross income to debtor Anthony Scott Levandowski ("Levandowski")[2]. (Case No. 20-bk-30242, Dkt. No. 1318 ["Tax Order"].) Appellees are the California Franchise Tax Board ("CAFTB") and the United States Internal Revenue Service ("IRS").

The appeal follows prior proceedings in which the bankruptcy court approved a global settlement among Levandowski, Uber, and Google, and determined certain tax consequences under 11 U.S.C. § 505. Previously, this Court reversed and remanded the bankruptcy court's

---

[1] The UMP is described in detail *infra* at 3, but in short, it is a settlement payment paid by Uber to Google, the tax consequences of which are the subject of this appeal.

[2] Levandowski and the Trustee of the Levandowski Residual Liquidation Trust, Peter Kravitz, filed a single joint brief in connection with this appeal. The Court notes that the record does not make any material distinction between Levandowski and the Trustee and since the merits of the appeal make no distinctions, the Court treats them as one party (collectively, "appellants"). No party has suggested that the Court do otherwise.

order finding that the UMP was not gross income for consideration of the statutory definition of gross income and alternative exclusion theories. (Case No. 22-cv-02781, Dkt. No. 78 ["Remand Order"].) On remand, the bankruptcy court made four findings relevant here, namely that: (i) the payment was not excludable as analogous to nontaxable insurance, (ii) the tax benefit rule did not apply, (iii) the payment was not a nontaxable working condition fringe, and (iv) the payment was not a deductible reimbursement of Levandowski's services for Uber. (Tax Order.)[3]

Two main questions are presented on appeal: does a third party's settlement payment resolving a taxpayer's adjudicated debt subject to an indemnification agreement (i.e. the UMP) fall within gross income as defined by the Internal Revenue Code? And, if so, should it be excluded on any of the bases raised?

Having carefully considered the parties' briefing[4] and relevant portions of the record[5], the Court **REVERSES** the bankruptcy court's order.[6]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes the parties' general familiarity with the factual circumstances giving rise to the Chapter 11 bankruptcy proceedings and incorporates the background information previously set forth in prior orders from this Court. (*See* Remand Order). Therefore, the Court summarizes below only the relevant facts for purposes of this appeal. The material events are undisputed:

Levandowski began his employment at Google in 2007. (See Appellants' Excerpts of Record ("ER") at ER-Trust-0005, 0363–0364.) In 2015, he and a colleague formed Ottomotto

---

[3] The order on remand was limited in scope.

[4] Appellants filed an opening and reply brief. (Dkt. Nos. 15, 22.) The CAFTB and the IRS each filed response briefs. (Dkt. Nos. 17, 19.)

[5] Record citations herein are to the record excerpts filed by appellants at Docket No. 16 and the California Franchise Tax Board at Docket No. 18. Some additional facts are drawn from the docket of the Chapter 11 proceedings because the Court can take judicial notice of public records to the extent they are not disputed.

[6] Pursuant to Federal Rules of Bankruptcy Procedure Rule 8019(b)(3), the Court determines that "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument."

LLC ("Otto"). (ER-Trust-0426.) Uber acquired Otto in August 2016. (ER-Trust-0364.) In connection with the sale, Levandowski and Uber entered into an indemnification agreement. (ER-Trust-0303–0324.) The Indemnification Agreement required Uber to indemnify a group of Otto employees, including Levandowski, for certain claims that Google could bring, including claims for breach of fiduciary duty, breach of duty of loyalty, breach of non-solicitation, non-competition, and confidentiality obligations. (*Id.*)

In October 2016, Google commenced an arbitration against the Otto founders, including Levandowski, seeking damages related to the sale of Otto based on contractual claims which alleged Levandowski had violated non-competition and non-solicitation obligations that he owed to Google. (ER-Trust-0053–55.) Google prevailed in arbitration and obtained a final award of $179,047,998.64 (the "arbitration award") which included disgorgement, attorneys' fees, and costs. (*See* ER-Trust-0007.) On March 4, 2020, a California Superior Court confirmed the award and entered judgment against Levandowski. (*See* ER-Trust-0364.) That same day, Levandowski filed a Chapter 11 petition. (*See* ER-Trust-0365.) He later filed an adversary proceeding against Uber to enforce an indemnification agreement. (*See* ER-Trust-0367.)

Levandowski, Uber, and Google participated in a mediation in January 2022, and the parties ultimately reached a settlement. (*See* ER-Trust-0428.) Pursuant to the settlement agreement, Uber agreed to make an "indefeasible" payment directly to Google (the "UMP") and to pay $2 million to the estate for plan distributions. The settlement agreement included mutual releases among Uber, Google, and Levandowski, including for "all claims related or connected in any way to the Indemnification Agreement." (*See* ER-Trust-0224.) The bankruptcy court approved the settlement and a tax determination motion, as described above. (ER-Trust-0580–583.) The prior appeal and remand are described above. This current appeal followed.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 158(a), district courts have jurisdiction to hear both interlocutory and final appeals from bankruptcy court orders and judgments. *See* 28 U.S.C. § 158(a). When reviewing a bankruptcy court's decision, the district court functions as an appellate court would and applies the same standards of review as a federal court of appeals. *Beal Bank v. Crystal*

*Props., LTD. (In re Crystal Props., Ltd.)*, 268 F.3d 743, 755 (9th Cir. 2001). The bankruptcy court's conclusions of law are reviewed *de novo* and its factual findings for clear error. *See Brace v. Speier (In re Brace)*, 979 F.3d 1228, 1232 (9th Cir. 2020).

The parties do not dispute the standards for review of conclusions of law, findings of fact, and mixed questions of fact and law. However, appellants contend that the main question, whether the UMP is taxable, is a purely legal one, while appellees assert it is a mixed question of fact and law.

Since the bankruptcy court's decision was based upon legal conclusions this Court instructed it to make on remand, not on new factual findings, the order is reviewed *de novo*. *See Albert-Sheridan v. State Bar of Cal. (In re Albert-Sheridan)*, 960 F.3d 1188, 1192 (9th Cir. 2020); *Vibe Micro, Inc. v. SIG Capital, LLC (In re 8Speed8, Inc.*), 921 F.3d 1193, 1195 (9th Cir. 2019).

## III. DISCUSSION

### A. Whether the UMP Constitutes Gross Income

Appellants argue that the UMP is not "gross income" because (1) it is analogous to an insurance payment excludable from gross income and (2) Levandowski lacked "complete dominion" over the payment which was not an "accession to wealth" under *Glenshaw Glass* and related authorities. *Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 477 (1955); *see also Comm'r v. Indianapolis Power & Light Co.*, 493 U.S. 203, 209 (1990).

Both appellees note the bankruptcy court determined that the UMP was made pursuant to the settlement rather than the indemnification agreement, which they contend defeats the insurance analogy. Independently, the CAFTB also argues that the payment is gross income under Internal Revenue Code § 61 and argues this Court may affirm the bankruptcy court's decision on any ground supported by the record. The IRS itself also argues the UMP is gross income and stresses that it is appellants' burden to prove an exception.

Given the issues raised in this appeal, and by way of background, the language of Internal Revenue Code Section 61(a) is instructive:

> Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees,

United States District Court
Northern District of California

> commissions, fringe benefits, and similar items; (2) Gross income derived from business; (3) Gains derived from dealings in property; (4) Interest; (5) Rents; (6) Royalties; (7) Dividends; (8) Annuities; (9) Income from life insurance and endowment contracts; (10) Pensions; (11) Income from discharge of indebtedness; (12) Distributive share of partnership gross income; (13) Income in respect of a decedent; and (14) Income from an interest in an estate or trust.

26 U.S.C. § 61(a). As appellees have stressed, the Supreme Court has "repeatedly emphasized the 'sweeping scope' of this section and its statutory predecessors" and "the corollary to § 61(a)'s broad construction, namely, the default rule of statutory interpretation that exclusions from income must be narrowly construed." *Comm'r v. Schleier*, 515 U.S. 323, 327–28 (1995).

*1. Insurance Analogy*

Appellants argue that an insurance settlement payment may not be income under Section 61(a), regardless of whether a "direct statutory exception" exists under Section 61(b), depending on the type of loss the payment is intended to cover. Rather, they contend the UMP was made pursuant to an indemnity agreement, which is akin to a nontaxable insurance payment.

The Court is not persuaded. The factual record indicates that the payment arose from a negotiated settlement among multiple parties, not pursuant to the indemnification agreement specifically. Given the structure and purpose of the settlement, the Court affirms the bankruptcy court's conclusion on this point.

However, even if the analysis focused on the indemnity agreement rather than the settlement agreement, appellants' insurance argument still fails. Appellants argue the UMP should be considered akin to insurance because it satisfies the test laid out in the *AMERCO* case, which the bankruptcy court explained in detail. (*See* Tax Order at 15 (citing *AMERCO & Subsidiaries v. Comm'r*, 96 T.C. 18 (1991).) To determine whether a payment is an "insurance transaction," the *AMERCO* court identified four "factors," which it referred to as "technical indicia" of insurance: whether the transaction involves (1) "insurance risk," (2) "risk-shifting and risk-distributing," (3) "in the absence of a statutory definition, 'insurance' . . . defined in its commonly accepted sense," and (4) "matters of Federal income taxation" that "must be resolved with principles of Federal income taxation in mind." *Id.* at 38–41. More specifically, appellants

United States District Court
Northern District of California

argue the insurance analogy on the grounds that the indemnification agreement sought to (1) manage the risk of any litigation Google might commence, (2) which would distribute the risk of a Google lawsuit against any of the six indemnified by Uber, and (3) which would therefore constitute a type of commonly accepted insurance.

The bankruptcy court disagreed and determined that the UMP did not satisfy the *AMERCO* test for the following reasons. One, the agreement did not address "insurance risk" because the indemnity addressed negotiated business risks attendant to Uber's acquisition of Otto, not typical insurable hazards. Two, while the arrangement included risk-shifting, risk distribution did not exist since Uber assumed only one concentrated risk tied to a single set of events, rather than pooling numerous independent risks. Three, the agreement did not resemble insurance in the commonly accepted sense because, among other reasons, Uber was not organized or regulated as an insurer, there were no "premiums" paid, and enforceability was contested. Fourt, under federal income tax principles, exclusions must be narrowly construed.

The Court agrees with each of the articulated reasons. The bankruptcy court's conclusion on this point is **AFFIRMED**.

*2. Section 61 and Complete Dominion*

Next, the IRS underscores the breadth of Section 61 and the longstanding principle that a third party's payment of a taxpayer's debt is income to the taxpayer. The Supreme Court has repeatedly emphasized the sweeping scope of Section 61(a). *Comm'r v. Schleier*, 515 U.S. 323, 327 (1995).

With respect to Section 61(a)(11), the parties do not dispute that it explicitly identifies discharge of indebtedness as one type of income. Further, they do not dispute that the UMP partially satisfied the arbitration award. On this basis, the bankruptcy court concluded that the UMP constituted gross income from the discharge of debt. Notwithstanding the foregoing, appellants contend that the UMP cannot constitute gross income in the first place because income Section 61 requires that "the taxpayer[] have complete dominion" over funds before such categorization can occur, citing to *Vukasovich, Inc. v. Comm'r*, 790 F.2d 1409, 1414 (9th Cir. 1986) ("*Glenshaw Glass* has defined gross income in terms of 'accessions to wealth, clearly

realized, and over which the taxpayers have complete dominion.'"). The bankruptcy court properly reasoned that references to "complete dominion" do not invalidate the foundational principle at issue: "[i]f A owes B a debt, and C pays the debt on A's behalf, it is elementary that C's payment is income to A as well as to B." *Sinyard v. Comm'r*, 268 F.3d 756, 758 (9th Cir. 2001).

Appellants' dominion-based argument is therefore irrelevant because here, Levandowski ("A") owed Google ("B") a debt (the Arbitration Award), and Uber ("C") paid Google in part to settle Levandowski's debt. The Court therefore **AFFIRMS** the bankruptcy court's determination that the UMP constituted gross income as discharge of indebtedness.[7]

*3. Discharge of Indebtedness and Section 108*

Appellants alternatively contend that, even if the UMP is income, it should be excluded as a discharge of indebtedness occurring in bankruptcy or because the discharge would have given rise to a deduction under 26 U.S.C. § 108. Thus, appellants ask the Court to find the UMP was excluded because it occurred as part of a bankruptcy plan and would have generated a deduction. *See* 26 U.S.C. §§ 108(a), 108(e)(2).

Appellees argue that discharge of indebtedness only occurs when the debtor, not a third party, cancels the debt. However, in the *Reading* case cited by the IRS, the Federal Claims Court found that the "indemnification agreement at issue result[ed] in taxable income to plaintiff because it contractually discharge[d] plaintiff's Egyptian tax obligation." *Reading & Bates Corp. v. United States*, 40 Fed. Cl. 737, 750 (1998). Similarly, in *Miller v. Commissioner*, a corporation shareholder who had borrowed $1.375 million from a third-party lender realized $900,000 of discharge-of-indebtedness income when a bloc of other shareholders paid that amount as guarantors in partial satisfaction of the shareholder's loan. T.C.M. (RIA) 2006-125 (T.C. 2006).

[7] Appellees argue that this is not what the bankruptcy court found. The Court sees no other possible interpretation: "The weight of authority support[s] the conclusion that the Uber Main Payment constituted gross income from the discharge of debt, *as argued by the FTB and IRS*." (Tax Order at 11 (emphasis added).) Alternatively, the CAFTB argues that this Court need not find the payment was income from discharge of indebtedness to affirm the bankruptcy court's finding that the payment constitutes gross income. Not so. Determining under what statutory provision the payment is income is a necessary step in the analysis to find whether the payment is income or not.

Therefore, a third party's payment that cancels the taxpayer's debt can constitute discharge-of-indebtedness income.

The Court agrees with the bankruptcy court's conclusion that the UMP should be included as gross income as a discharge of indebtedness. However, the bankruptcy court did not consider Section 108(a), which states "[g]ross income does not include any amount which . . . would be includible in gross income by reason of the discharge (in whole or in part) of indebtedness of the taxpayer if . . . the discharge occurs in a title 11 case" where it is "granted by the court or is pursuant to a plan approved by the court." 26 U.S.C. §§ 108(a), 108(d)(2).

The CAFTB asserts that the UMP is nonetheless taxable because Section 108 does not apply where the payment was in fact compensation for services, citing to *Neff v. Commissioner*, 104 T.C.M. (CCH) 222 (T.C. 2012). It also cites *Spartan Petroleum Co. v. United States* for the assertion that "if an employee owes his employer $100 and renders $100 worth of services for the employer in return for the employer's cancellation of the indebtedness, the employee has received personal service income of $100." 437 F.Supp. 733, 736. But in *Spartan*, the court found the cancellation was in fact a transfer of property wherein plaintiff did not discharge its indebtedness. *Id.* at 736–37.

The CAFTB's argument is essentially that because Levandowksi entered into the indemnity agreement during the negotiations of his employment and the sale of Otto, the indemnity agreement was in fact compensation for services, and therefore the UMP should also be considered compensation for services. This logic is precisely what the CAFTB asks the Court to reject, however, with regards to appellants' insurance analogy argument. There, this Court affirmed the bankruptcy court's finding that it was the settlement agreement, not the indemnity agreement, which controls the analysis. So too here. The UMP, made pursuant to the settlement agreement, satisfied claims including but not limited to the indemnity claim. For example, the settlement agreement also released any of Google's claims against Uber relating to these events.

Accordingly, because the settlement payment was made in a Chapter 11 proceeding and pursuant to a plan approved by the court, it is excludable under Section 108(a). The Court therefore **REVERSES** the bankruptcy court's determination that the UMP was not excludable.

United States District Court
Northern District of California

## IV. CONCLUSION

Based upon the foregoing, the decision of the bankruptcy court is **REVERSED**. The case is remanded for proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: October 21, 2026

YVONNE GONZALEZ ROGERS
CHIEF UNITED STATES DISTRICT JUDGE